621 So.2d 413 (1993)
Charles Henry WILLIAMS, Petitioner,
v.
STATE of Florida, Respondent.
No. 79487.
Supreme Court of Florida.
July 1, 1993.
Bennett H. Brummer, Public Defender, Eleventh Judicial Circuit, Miami, and May L. Cain of Cain & Snihur, Sp. Asst. Public Defender, North Miami Beach, for petitioner.
Robert A. Butterworth, Atty. Gen., Tallahassee, Katherine Fernandez Rundle, State Atty., and Paul Mendelson, Asst. State Atty., Miami, for respondent.
KOGAN, Justice.
We have for review Williams v. State, 592 So.2d 350 (Fla. 3d DCA 1992), because of apparent conflict with Hodges v. State, 403 So.2d 1375 (Fla. 5th DCA 1981), review denied, 413 So.2d 877 (Fla. 1982); and Helton v. State, 365 So.2d 1101 (Fla. 1st DCA), cert. denied, 373 So.2d 461 (Fla. 1979), on the issue of whether similar fact evidence is admissible to rebut a defense of consent is a sexual battery case. We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution.
Charles Henry Williams was convicted of sexual battery, kidnapping, robbery, and *414 possession of cocaine. At trial, the State was allowed to present, over objection, the testimony of two women who testified that they had been sexually assaulted by Williams under circumstances similar to those present in this case. Williams maintains that admission of this other crime evidence was error because the testimony only served to prove bad character or a propensity to assault women and thus is inadmissible under section 90.404(2)(a), Florida Statutes (1989). For the reasons set forth below, we agree with the district court that the challenged testimony was properly admitted in this case.
The attack on the complainant and the attacks on the two witnesses occurred in the same general area of Miami during the early morning hours on a weekend. Prior to the attacks, Williams engaged all three of the women in conversation concerning purchasing cocaine or having sex for drugs. Williams grabbed each of his victims in a tight choke hold from behind and dragged each of the victims to a secluded spot. The complainant testified that after dragging her behind the detached hood of a car, Williams took her cocaine. Then, while holding her by the neck with one hand, Williams masturbated with the other hand prior to penetrating her. After having sexual intercourse with her, Williams told the complainant not to say anything or he would kill her and then calmly walked away. The first witness's testimony was substantially the same as the complainant's. While holding the witness about the neck, Williams masturbated prior to forcing himself on her. He then took the woman's cocaine and walked away. The second witness testified that after Williams grabbed her by the neck, she lost consciousness momentarily and awoke with her pants pulled down. Williams walked away from her when confronted by another man.
Williams was apprehended soon after the attack on the victim in this case. When questioned, Williams told police that he had helped the complainant purchase crack cocaine and had sex with her in exchange for drugs, but she had become angry when he refused to give her the drugs.
Relying on the conflict cases, Williams maintains that consent is unique to the individual and therefore cannot be proved by evidence of other sexual encounters because the lack of consent of one person is not proof of the lack of consent of another. Hodges, 403 So.2d at 1378; Helton, 365 So.2d at 1102. Thus, the only purpose served by the testimony concerning the encounters with the two witnesses was to show bad character or the propensity to commit sexual battery.
This case presents a textbook example of the interplay of Florida's rules of evidence concerning the admissibility of evidence of other crimes, wrongs, or acts. As a general rule, such evidence is admissible if it casts light on a material fact in issue other than the defendant's bad character or propensity. Bryan v. State, 533 So.2d 744, 746 (Fla. 1988), cert. denied, 490 U.S. 1028, 109 S.Ct. 1765, 104 L.Ed.2d 200 (1989); Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). Evidence of other crimes or acts may be admissible if, because of its similarity to the charged crime, it is relevant to prove a material fact in issue. But it may also be admissible, even if not similar, if it is probative of a material fact in issue. Although similarity is not a requirement for admission of other crime evidence, when the fact to be proven is, for example, identity or common plan or scheme it is generally the similarity between the charged offense and the other crime or act that gives the evidence probative value. Thus, evidence of other crimes, whether factually similar or dissimilar to the charged crime, is admissible if the evidence is relevant to prove a matter of consequence other than bad character or propensity. See Bryan, 533 So.2d at 746; Charles W. Ehrhardt, Florida Evidence § 404.09 (1993).
The broad rule of admissibility based on relevancy, commonly known as the Williams rule, is codified at section 90.404(2)(a), Florida Statutes (1989). That provision provides:

*415 Similar fact evidence of other crimes, wrongs or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but is inadmissible when the evidence is relevant solely to prove bad character or propensity.
Section 90.404(2)(a). It is clear that other crime evidence that is probative of a material fact in issue is not inadmissible simply because it has a tendency to suggest the commission of another crime and thus necessarily is prejudicial to the defendant. Bryan, 533 So.2d at 747; Williams, 110 So.2d at 660. However, evidence of other crimes that is relevant and therefore not barred by section 90.404(2)(a), may be excluded under section 90.403 if its probative value is substantially outweighed by undue prejudice. Bryan, 533 So.2d at 747.
Similar fact evidence has been held admissible in sexual battery cases when the evidence was found to have a logical relationship to some material aspect of the charged crime beyond the character of the defendant or his propensity to force himself on women. For example, in Williams, the victim testified that she returned to her car in a department store parking lot to find Williams hiding in the back seat. Williams commandeered the car and then sexually assaulted her. At trial, Williams testified that he had prior sexual relations with the complainant and that she consented on the day in question. The State offered the testimony of a deputy sheriff who stated that on the day after the incident the defendant advised him that when he saw the victim's automobile he thought it was his brother's and crawled in the back to take a nap. 110 So.2d at 656-57.
The State also offered the testimony of a prior victim and a police officer who testified about an incident that occurred six weeks prior to the attack on the complainant. The prior victim testified that she had parked her car in the same lot and at about the same time as the complainant. When she returned to her car she too discovered Williams hiding on the floor of the back seat. When captured, Williams claimed that he had mistaken the car for his brother's, and had crawled into the back to take a nap. The two vehicles were of different make, color, and year. 110 So.2d at 657-58. This Court concluded that the similar fact evidence was properly admitted because
[i]t definitely had probative value to establish a plan, scheme or design. It was relevant to meet the anticipated defense of consent. At the time when it was offered in the presentation of the State's main case it had a substantial degree of relevance in order to identify the accused. Finally, it was relevant because it demonstrated a plan or pattern followed by the accused in committing the type of crime laid in the indictment.
110 So.2d at 663.
More recently, in Jackson v. State, 538 So.2d 533 (Fla. 5th DCA 1989), testimony was admitted that, like the complainant in that case, the witness had been tricked into accompanying the defendant to an isolated area where she was raped. In each of the encounters, the defendant drove his victim to a rural area on some pretext and there assaulted her while she stood nude in front of the headlights of the car. Jackson claimed to have paid both the complainant and the witness for having sex with him. The Fifth District Court of Appeal concluded that the testimony concerning the prior incident was admissible because it was relevant to show modus operandi, plan or scheme, and to rebut the defendant's claim of sex for pay. 538 So.2d at 535.
In contrast to the similar fact evidence found to be admissible in Williams and Jackson, the other crime evidence held inadmissible in Hodges and Helton did nothing more than expose the defendant's bad character and propensity to sexually assault women. In Hodges, testimony was allowed over objection from a woman who was forced by the defendant to submit to sex three years before the charged crime. The only similarity between the charged sexual battery and the prior offense was the fact that in both instances the defendant had forced intercourse with a casual acquaintance. The evidence did not tend to *416 show a scheme or plan to isolate the victims or to create a defense, nor did it tend to prove any other material fact at issue. Thus, the other crime evidence was correctly held inadmissible by the district court because it was relevant to show nothing more than bad character and propensity.
As was the case in Hodges, Helton concerned testimony about another incident that was not similar to the charged offense in any meaningful way so as to make it probative of anything other than propensity to assault women. As noted by the district court, "[t]he only similarities between the two incidents [were] that they occurred in wooded areas, the victims allegedly did not consent to the encounters, and the victim in each case hailed a passing car for help. There [were] numerous dissimilarities." 365 So.2d at 1102. More importantly, there was nothing about the prior incident other than the fact that the woman involved did not consent that shed any light on whether the victim of the charged crime consented.
We agree with the Hodges and Helton courts that because consent is unique to the individual the mere fact that the victim of an unrelated assault did not consent cannot serve as evidence of nonconsent by the victim of the charged offense. However, we do not agree that other crime evidence is never relevant to the issue of consent. The Fifth District Court of Appeal seems to have reached a similar conclusion in Jackson, which postdates its 1981 decision in Hodges.
We find persuasive the analysis employed by the Michigan Supreme Court to uphold the admission of similar fact evidence under circumstances strikingly similar to those in this case. In People v. Oliphant, 399 Mich. 472, 250 N.W.2d 443 (1976), after meeting his accuser, the defendant talked with her about race prejudice and marijuana. After gaining the woman's confidence, he eventually drove her to a secluded area where he raped her. Immediately after, Oliphant told the woman that she should not prosecute him, that she could never prove rape, and that he had a tape recorder in the car. When he dropped her off, he told her to be sure to get his license plate number. Oliphant then went to a police station and reported that he had sex with a woman who became angry when he told her she had an unpleasant body odor. 250 N.W.2d at 445-46.
At trial, three other women testified about similar encounters with Oliphant. Like the complainant, each of the witnesses was a young, white college student. After meeting each of the young women, Oliphant gained a measure of trust by conversing about matters such as marijuana and interracial dating. In each case, he drove his victim to an unfamiliar place where he raped her. He gave one victim his name and address and offered to drive her to the police in an effort to convince her that it would be futile to file a complaint against him.
In finding the evidence of the other encounters relevant to the issue of consent, the Michigan Court explained:
[T]he testimony of "A", "B" and "C" goes beyond tending to show that defendant raped other young women. The many similarities in all four cases tend to show a plan or scheme to orchestrate the events surrounding the rape of complainant so that she could not show nonconsent and the defendant could thereby escape punishment... .
... .
On the key issue of consent there is directly contradictory testimony; thus the trier of fact must look to the attendant circumstances and the parties' behavior prior to and subsequent to the act of intercourse. It then becomes material to know whether defendant orchestrated those circumstances to give the appearance of consent and to make proof of nonconsent difficult... .
Certainly, the fact that an individual commits a rape at one time has no bearing on whether another woman consented to intercourse at another time. Here, however, the People did not offer the prior acts to prove prior rapes, or that the defendant is a bad man with criminal propensities. The People offered the prior acts to show the scheme, plan or system *417 employed by the defendant in raping the complainant in a manner and under circumstances which gave the appearance of consent should he meet with resistance.
It is true that even if a plan to orchestrate events to make it appear that the woman consented is shown, this is not conclusive proof that the woman did not consent. Evidence of such a plan, however, along with evidence of the other circumstances surrounding the intercourse, is both relevant and material to the issue of consent... .
250 N.W.2d at 449-50 (citations and footnotes omitted).
Following similar logic, the Supreme Court of Arizona, in State v. Hill, 104 Ariz. 238, 450 P.2d 696 (1969), held admissible evidence of a prior rape because it tended to show a common plan or scheme to set up a defense of consent. In both the prior incident and the charged crime, Hill broke into the victim's house, threatened her with a sharp object, pulled an object over her face, committed various sex acts on the victim, and then fell asleep in the woman's bed. In the charged crime, the defendant testified that the complainant invited him to have sex with her in exchange for money but when he refused to pay she claimed he raped her. The Arizona Court noted that the defendant's claim of consent was corroborated by the fact that rather than fleeing he fell asleep in the victim's bed. Thus, the evidence of the prior rape, where the defendant also fell asleep in his victim's bed, "was extremely relevant and indeed vital proof of the fact that a forcible rape had been committed." 450 P.2d at 697; see also State v. Willis, 370 N.W.2d 193 (S.D. 1985) (similar fact evidence of sexual encounter with another mentally retarded woman who also was under the influence of the defendant was admissible to rebut consent defense).
In this case, the testimony concerning the other encounters was relevant to rebut Williams' defense that the complainant had consensual sex with him in exchange for drugs. The similar fact evidence tended to rebut the defense by showing a common plan or scheme to seek out and isolate victims likely not to complain or to complain unsuccessfully because of the circumstances surrounding the assaults and the victims involvement with drugs. The other crime evidence was not made the focal point of the trial in this case and proper cautionary instructions were given. Thus, because the challenged testimony is relevant to a material fact in issue and its probative value clearly outweighs the potential for undue prejudice, there is no bar to its admission under either section 90.404(2)(a) or section 90.403.
We find the other issues raised by Williams to be without merit. Accordingly, we approve the decision below and disapprove Hodges and Helton to the extent that they can be read to be inconsistent with this opinion.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES and HARDING, JJ., concur.