633 So.2d 96 (1994)
STATE of Florida, Petitioner,
v.
Thomas O'BRIEN, Respondent.
STATE of Florida, Petitioner,
v.
Thomas O'BRIEN, Respondent.
Nos. 93-1841, 93-1842.
District Court of Appeal of Florida, Fifth District.
March 2, 1994.
Norman R. Wolfinger, State Atty., and Benjamin B. Garagozlo, Asst. State Atty., Melbourne, for petitioner.
Douglas D. Marks of Potter, McClelland, Marks & Healy, P.A., Melbourne, for respondent.
EN BANC
HARRIS, Chief Judge.
We have elected to hear these cases en banc.
The State seeks certiorari review of in limine orders of the lower court denying the State the right to present certain "Williams rule"[1] evidence in the prosecution of Thomas O'Brien for sexual battery of children under twelve years of age.
*97 The events involved allegedly occurred during a period of time between 1982-1985 in Brevard County. The accused at that time was approximately fifteen years of age. His sister, Mary O'Brien Arnold, operated a baby-sitting service in their home for several neighborhood children. Four young women, presently aged fifteen to seventeen, have recently alleged that during the relevant time period the accused repeatedly molested them sexually. At issue is whether, in the prosecution of the accused for the crimes allegedly perpetrated on one victim, certain testimony of the other three victims is available to the State. Before this court are two cases, one involving "Debbie" and the other "Jessica." These cases have not been consolidated but are traveling together on appeal.
A single hearing was held on the motions in limine filed in both cases. "Debbie" testified that the accused's sister would leave the children alone when she ran errands and when that occurred, the accused was in charge of taking care of the children. She testified on one occasion, when she was sitting on the couch, he touched her vagina with both his penis and his mouth.[2] She also testified that on several occasions he would ask her and another child, "Lisa," to bring food to him in his bedroom. He would then close the door and would either touch their genitals or have them touch his. She says he threatened them that, if they told anybody about what he was doing, a member of their family would be hurt. Finally, she testified that the accused touched her vagina with his hand on an occasion when she and her brother were being driven home by him.
"Lisa", a child not included in either information, testified that the accused's mother often left them alone with the accused. She testified that he sexually touched her and Debbie while they were alone with him in his bedroom. He made her touch his penis and he touched her vagina. She said that he made them bring him food. They did as he instructed "because he was the boss." She testified also that he threatened them.
"Jessica" testified about four sexual acts with the accused. She initially said these occurred when she was somewhere between the ages of four and six. Like the others, "Jessica" testified that the accused's mother would frequently leave the house and that the accused or his grandmother would take care of them. The sexual incidents "Jessica" described took place while she and the accused were in the living room together. He would make her suck his penis. She said that some of the other children would walk in and out while this was occurring. He threatened her that, if she told, she would be in "big trouble."
"Jennifer", also not included in either informations before this court, testified that either the accused or his older sister often kept an eye on them while the mother was away from the house running errands. She testified about three sexual incidents. The first began in the bathroom; the accused came in while she was pulling up her pants, took her to his bedroom and made her engage in mutual oral sex. She then described an incident where she approached him asking for some crackers because she was hungry and, in exchange for the crackers, he made her submit to open mouth kisses in which his tongue came into contact with her mouth.
"Jennifer" also testified that after considerable time had passed since the earlier incidents, one day the accused got her into the living room and told her he wanted to have sex with her again. He told her that he was also "doing it" to Debbie.
The accused and his sister both testified at the in limine hearing. In essence, the testimony of the accused was that because of a variety of school, athletic and work activities, he was not at home during the relevant hours when the children were there. He also filed a notice of alibi detailing these outside activities. To reinforce this testimony, his sister testified about the times the children came and went. Although she testified that she never left the children alone with the accused, she did acknowledge on cross-examination that it was possible that the accused could have been alone with the children at some time. (Though she would find it hard to believe.) She testified that when she left the house, the children would be left either in *98 the care of her mother or a woman named Madeline Hengst.
In Debbie's case, the trial court disallowed admission of any of the proffered testimony except Jennifer's account of the oral sex and her testimony that the accused said he was "doing it to Debbie."[3] In Jessica's case, the court allowed more of the testimony but excluded evidence of any sexual acts that were not identical to those alleged by Jessica  i.e., touching the accused's penis.[4]
The trial judge ruled that the evidence he disallowed was offered solely to prove bad character or propensity and, therefore, not valid "Williams rule" evidence. He further ruled that the evidence of the accused's other conduct was not sufficiently similar to the crimes charged. Also, the court ruled the evidence did not show these crimes occurred in a "familial or custodial" setting and thus could not be admitted for corroboration.
The trial court also made the additional finding, in conformity with section 90.403, Florida Statutes, that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence. As the trial judge expressed: "Clearly, if allowed, the collateral crimes evidence would become the focal point of the case."
We agree with the trial court and deny the writs.
We assume for the purpose of this opinion that the proffered similar-fact testimony relating to the other young girls is "Williams rule" evidence.[5] The question then becomes *99 whether the trial court erred in holding that the unfair prejudice to the accused by the admission of this evidence outweighs the probative value of the proffered evidence to prove a material fact in issue.
Since that portion of the proffered testimony which indicates that the young girls were left alone with the accused is admissible without invoking the Williams rule, it is only the probative value of the additional proof of the collateral crimes (that the other girls were also molested when they were left alone with the accused) which must be weighed against the unfair prejudice to the accused.
We were directed by the supreme court in the original Williams case[6] (110 So.2d 654) to carefully examine the proffered testimony to make sure that it is relevant:
As we did in Talley v. State, [160 Fla. 593, 36 So.2d 201 (Fla. 1948)], we emphasize that the question of the relevancy of this type of evidence should be cautiously scrutinized before it is determined to be admissible.
Williams at 662.
And in Heuring v. State, 513 So.2d 122 (Fla. 1987), the supreme court stated:
Similar fact evidence that the defendant committed a collateral offense is inherently prejudicial. Introduction of such evidence creates the risk that a conviction will be based on the defendant's bad character or propensity to commit crimes, rather than on proof that he committed the charged offense ... To minimize the risk of a wrongful conviction, the similar fact evidence must meet a strict standard of relevance. (Emphasis added.)
Heuring at 124.
The Heuring court also held:
[To be admissible] the evidence must be relevant to a material fact in issue such as identity, intent, motive, opportunity, plan, knowledge, or absence of mistake or accident. See § 90.404(2)(a).
Heuring at 124.
The supreme court in Heuring did announce a more liberal standard of admissibility (a greater willingness to risk a wrongful conviction) in cases involving sexual assaults allegedly committed in a familial context. Although the logic for this distinction is somewhat difficult to understand,[7] the effect of Heuring is not. The supreme court has now extended the Williams rule far beyond the section 90.404(2)(a) concept in cases involving familial relationships and has made it applicable any time the similar fact evidence tends to corroborate the victim's testimony. But this is not a case involving a familial relationship. A familial relationship is neither an element of the charge nor a fact alleged in the information. It is simply not a material fact in issue in this cause. The trial court specifically found as a matter of fact, supported by the record, that no familial (or *100 custodial) relationship was properly presented to the court.
Whether the other girls were or were not themselves molested during the time they were left unattended with the accused is of little, if any, probative value as to the issue of whether the accused had the opportunity to abuse the alleged victims in these cases. For example, if he had not abused the other girls during these periods when they were alone with him, would that tend to prove that he lacked the opportunity to abuse the victims named in these cases when he was alone with them? We think not.[8]
We agree with the trial court that the proof of the collateral crimes is far more prejudicial to the accused than any proper probative value of such evidence in this case.
Writs denied.
DAUKSCH, COBB, GOSHORN, PETERSON and THOMPSON, JJ., concur.
DIAMANTIS, J., concurs in result only with opinion with which DAUKSCH, J., concurs.
GRIFFIN, J., dissents with opinion in which W. SHARP, J., concurs.
DIAMANTIS, Judge, concurring in result only.
I concur in the result of the majority opinion because the state has not charged the accused with committing the offenses in a familial or custodial context. See Saffor v. State, 625 So.2d 31, 35 (Fla. 1st DCA 1993); § 794.041(2), Fla. Stat. (Supp. 1984).
DAUKSCH, J., concurs.
GRIFFIN, Judge, dissenting.
As the majority opinion mentions, this is a recently-commenced criminal prosecution for sexual acts allegedly perpetrated by the defendant on four young female children in the early 1980's while they were entrusted to the defendant's sister for day care. The record suggests that this conduct came to light in March 1992 when "Lisa" told her parents about the alleged abuse. She testified that she had never discussed the incidents with anyone until December 1991 when she discussed them with "Debbie." She testified that she had not seen "Jessica" or the fourth witness, "Jennifer," since she was being baby-sat at the O'Brien's.
Jessica testified she only told a classmate what had happened when she was in the fourth grade. In 1992, she ran across her fourth grade friend at a skating rink and the girl pressured Jessica to tell her parents. Jessica testified that she last saw Debbie four years ago and that she had not seen Lisa since she stopped going to the O'Briens. Debbie testified that she never discussed what happened at the O'Brien's until the December 1991 conversation with Lisa.
Jennifer testified that after the last incident in which the defendant told her he wanted to have sex with her again and said he was "doing it" to Debbie, she told the defendant's sister what was occurring. The sister merely called Jennifer a "lying little brat." Jennifer then told her own mother, as a result of which they terminated the O'Brien's baby-sitting service. She testified she had not seen or spoken to any of the other witnesses since 1984 and had first been contacted a couple of months ago by state investigators to find out her knowledge of events at O'Brien's home.
These cases have provided the opportunity for the en banc majority to severely limit the Williams rule by broadly applying section 90.403. The majority opinion begins by acknowledging that the proffered evidence is "Williams rule" evidence, i.e. that it is evidence of other crimes, wrongs or acts of the defendant that are relevant to prove a material fact in issue, such as motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake. Given that the defendant has denied he perpetrated any sexual acts on the small children being cared for in *101 his sister's home, that he contends that he was never around these children, that he was not left alone with them and that he never had, or exercised, any custodial authority over them, the majority's "assumption" that the evidence of the other three alleged victims qualifies for admission under section 90.404 seems inescapable.
The majority theorizes that this "Williams rule" evidence is nevertheless properly excluded by the lower court pursuant to section 90.403, Florida Statutes (1993), because the prejudicial effect (i.e. the tendency of such evidence to prove bad character or propensity) is outweighed by the probative value the evidence would have. The majority assumes that the defendant's contention that he was not present in the home could be rebutted adequately by simply allowing these children to testify that he was present, without allowing any reference to the sexual acts he perpetrated on the other children while there. This, in turn, assumes that evidence regarding other acts of the defendant's sexual misconduct is not truly necessary to impeach the defendant's version of events.[1] Such an analysis unduly restricts the use of section 90.404. By assuming the "bad act" testimony is inherently unfairly prejudicial, section 90.403 will always permit its exclusion unless some compelling need can be shown to outweigh the unfair prejudice. This is not how section 90.404 should work. If the evidence meets the requirements of the statute, it is admissible and should be admitted unless some special circumstance warrants its exclusion. The fact that, by its nature, it also may suggest bad character or propensity should not create a presumption against admission. As our supreme court has emphasized, in making an evidentiary ruling in child sexual abuse cases applying section 90.403, it is appropriate for the trial court to balance the rights of criminal defendants with those of the child victims whom the statutes seek to protect. See Pardo v. State, 596 So.2d 665, 668 (Fla. 1992). Evidence that qualifies as Williams rule evidence in such cases should not be excluded simply because it also tends to show a propensity on the part of defendant to commit bad acts.
In addition, the issues in this case are more complex than simply whether the state can show the defendant really was on the premises at some time or another. They include the question whether he was left alone with the children and whether his level of access to the children was such that he was able to perpetrate sex acts on them without being detected by anyone else. Also relevant is the question of what devices he employed to use the children sexually and what means he used to keep them from telling, including the types of threats he used. Important also is whether he had or exercised custodial authority over the children. One of the children directly testified that he did exercise custodial authority. The testimony of the other children supports that conclusion by showing how he ordered them to do a variety of things for him, including perform sexual acts.
As the Florida Supreme court recently explained:
Similar fact evidence has been held admissible in sexual battery cases when the evidence was found to have a logical relationship to some material aspect of the charged crime beyond the character of the defendant or his propensity to force himself on women.
Williams v. State, 621 So.2d 413, 415 (Fla. 1993).
"Williams rule" evidence is available to establish a variety of material facts in issue, including opportunity, preparation, plan, or absence of mistake. § 90.404, Fla. Stat. (1993). It is proper, for example, to use similar fact evidence to rebut the defense by showing a common plan or scheme to seek out and isolate victims likely not to complain or to complain unsuccessfully because of the circumstances surrounding the assaults. 621 So.2d at 417. The majority can find no category enumerated in section 90.404, other *102 than "opportunity," that is relevant to the issues in this case. The categories in the statute are not exclusive, however. The phrase used in the statute is "such as"; the categories are not intended to be exclusive. Plainly, the excluded evidence in these cases does far more than suggest "propensity"; it is relevant to show that this individual used his sister's day care center as a private seraglio  that when this sixteen year old boy was left alone with these small children, he bribed them, threatened them, or otherwise took advantage of the fact that he was "the boss of them" to commit a variety of sexual acts on these children using means calculated to discourage them from telling anyone.
The majority opinion does not address the trial court's stated reasons for believing that section 90.403 authorized exclusion.[2] The concern expressed by the trial court was that because there were three of these additional victims/witnesses and issues had been raised by the defendant concerning their credibility, "the collateral crimes evidence would become the focal point of the case." Exclusion of relevant evidence of other crimes because such evidence would become the "focal point of the case" is a very narrow ground for exclusion, however. It is most appropriately applied where there is scant evidence of the crime charged and the state relies on substantial evidence of the other uncharged crime to piggyback a conviction. See Williams v. State, 117 So.2d 473 (Fla. 1960). This is a different type of case entirely, and the mere fact that there are several corroborating witnesses ought not to be the basis for exclusion. As the First District Court recently observed:
[W]e find no merit to appellant's argument that the admission of the collateral-crime evidence was unduly prejudicial, because of the quantum of evidence (the testimony of three witnesses), and because it became the feature of the trial. The fact that three collateral-crime witnesses testified for the state does not necessarily give rise to a finding of prejudice. See Coleman v. State, 484 So.2d 624 (Fla. 1st DCA 1986) (admission of collateral-crime evidence from three other victims was proper in sexual battery case of child under the age of 11). Moreover, it was the defense counsel's own trial tactics, i.e., calling numerous witnesses to impeach the credibility of the collateral-crime witnesses, which emphasized the collateral-crime evidence. See Travers v. State, 578 So.2d 793 (Fla. 1st DCA) (in sexual battery trial involving younger sister, similar-fact evidence involving sexual battery of older sister clearly became feature of trial, both as to quantum of evidence and arguments of counsel; however, excessive emphasis on such evidence was attributable to defensive efforts and thus did not require reversal), review denied, 584 So.2d 1000 (Fla. 1991).
Rawls v. State, 624 So.2d 757, 760 (Fla. 1st DCA 1993).
This case is similar to the case of Snowden v. State, 537 So.2d 1383 (Fla. 3d DCA), rev. denied, 547 So.2d 1210 (Fla. 1989). Snowden was convicted of five counts of sexual battery involving two children (a boy and a girl) aged four and six months. The defendant's wife was the baby-sitter for the child-victims who, along with other Williams rule witnesses, were left at the defendant's residence in the care of the defendant while she ran errands. The four-year old victim had given inconsistent testimony, giving rise to the issue of fabrication by the child. Evidence of two other children who had been sexually abused *103 by the defendant while the children were left in the care of the defendant's wife was introduced as similar fact evidence in the trial.
In affirming the lower court, the Snowden court made a detailed analysis of Snowden's complaint that the similar fact evidence improperly had become a feature of the trial. Id. at 1389, 1390. The court cited five reasons why the evidence was not subject to exclusion on that ground: (1) the jury was properly instructed about the proper use of such evidence; (2) the evidence was not excessive in volume in comparison to the evidence of the charged offenses; (3) part of the reason the similar fact evidence was a "feature" of the case was attributable to the defendant; (4) the evidence was essential to the state's proof; and (5) in the context of such cases involving the sexual abuse of children by adults having custodial access to the children, such evidence has a recognized corroborative function in showing modus operandi, scheme, a plan or sexual design. 537 So.2d at 1389.[3]
In the case of Cotita v. State, 381 So.2d 1146 (Fla. 1st DCA 1980), rev. denied, 392 So.2d 1373 (Fla. 1981), defendant was charged with a lewd and lascivious assault on his five-year old daughter. Testimony from two other girls, aged nine and eleven, who lived in the same mobile home park and who had visited the defendant's trailer, was permitted as similar fact evidence. This evidence showed that the defendant had committed the same type of sexual acts on them in a shed and in the defendant's trailer. The court held that such evidence was relevant to the issue of the accused's alibi defense and to illustrate a "pattern of criminality." Id. at 1147. In this case, the testimony of the four girls is relevant to show that, contrary to his contention, the defendant had the opportunity to perpetrate sex acts on the small children being cared for at his home and to show how he went about carrying out his scheme of sexual misconduct so that the children would acquiesce.
The majority's approval of the lower court's conclusion that the defendant was not in a position of custodial authority over the children and, therefore, the "similar acts" evidence was inadmissible for the purpose of corroboration is disturbing. The testimony of the sister is extremely equivocal on this point and if the children are telling the truth about being left alone with defendant when his sister went away to run errands, the children were placed in such a position that the reasons expressed by the supreme court for permitting such evidence for corroborative purposes should apply. No other adults were present to observe or to protect the children. These young women testified about being made to perform a variety of services for him "because he was the boss." In these circumstances, in the crucible of the trial, these children ought to at least have the benefit of each other's corroborative testimony that "he did it to me too."
In this case, the testimony of the four young women, if believed by the jury, shows not only a pattern of similar criminal conduct, but proves that, contrary to defendant's position, he had the opportunity, intent and a plan for committing lewd acts on the small children subject to his control. The reasons given by the lower court do not warrant blanket exclusion in limine. Consistent with the evidence actually adduced at trial, certain of the evidence that has been excluded in limine may or may not be admissible in trial.
W. SHARP, J., concurs.
NOTES
[1] Section 90.404(2), Florida Statutes (1991).
[2] These are the two incidents charged in the information.
[3] He also allowed Debbie to testify about one charged and one uncharged event.
[4] Also, some references to the children being in the care of defendant were permitted while other such references were disallowed.
[5] There is, however, a compelling argument that this really is not "Williams rule" evidence. Certainly it quacks like a duck and waddles like a duck; however, there appears to be an uncharacteristic lack of webbed feet which prevents the declaration, with total certainty, that it is a duck. While it is true that the proffered acts and circumstances relating to all the young girls are somewhat similar, one section of the 90.404(2)(a) requirement appears to be missing: "when relevant to prove a material fact in issue." (Emphasis added.)

It is apparent from the record of the in limine hearing that the accused's only defense is that "It didn't happen and it could not have happened because I was never left alone with the victim." Of the "issues" listed in Williams which might support "Williams rule" evidence, only "plan," "a pattern of criminality" and "opportunity" seem possible. But nothing in the witnesses' testimony tends to prove that the alleged incidents resulted from a "plan." Nothing was offered to show that the accused planned to be home at a particular time in order to be there when his sister might leave the girls alone. He lived in the house. When he happened to be home, his sister sometimes left the children unattended and he is alleged to have molested the girls during some of those occasions. The fact that he might have a propensity to sometimes take advantage of an opportunity does not measure up to the "plan" cases described in the various supreme court decisions. See, for example, the "plans" discussed in Williams v. State, 621 So.2d 413 (Fla. 1993). See also Thomas v. State, 599 So.2d 158 (Fla. 1st DCA 1992), which discusses the need for the "plan" to be a material issue of fact before it can justify "Williams rule" evidence. "Evidence of ... [a] plan is generally not admissible to prove the ... plan as an ultimate fact. The evidence is admissible only when it is offered as the basis to infer a material issue in the case." Ehrhardt, Fla. Evidence, § 405.15 2d Ed. (1984).
Concerning the "pattern of criminality" basis for admitting the evidence, consider the discussion in footnote 2 in Sias v. State, 416 So.2d 1213 (Fla. 3d DCA 1982):
While it is true ... that Williams suggests that collateral crime evidence could be relevant to establish a "pattern of criminality," the court in Williams at the same time rejected the notion that evidence of other crimes could be admitted solely to show propensity. Thus, "pattern of criminality" must mean something other than that the defendant committed a like crime in the past, for if not, admission of evidence under this theory would swallow up the rule barring evidence to show propensity. Perhaps it is significant that in codifying the
Williams rule into the evidence code, the legislature did not list proof of a "pattern of criminality" as a valid basis for offering similar fact evidence. Because section 90.404(2) is not all inclusive, this does not mean that such proof is necessarily inadmissible. It does suggest, however, that such evidence should have particular relevancy to some issue that distinguishes it from mere proof of propensity.
It is true that a portion of the proffered testimony is relevant to rebut the accused's lack of opportunity defense. But the relevant portion of the proffered testimony does not depend on any "Williams rule" analysis for admission. The witnesses are competent (without 90.404(2)(a)) to testify that they also were left alone in the accused's presence. This is merely firsthand, personal knowledge testimony which does not imply other crimes and is relevant to prove that the accused had opportunity. But the fact that these witnesses allege that the accused also abused them during this period, while certainly helpful to the State's case by showing bad character and propensity, is irrelevant to the issue of opportunity. Whether or not he abused the other girls does not add to or take away from the fact that he had the opportunity to abuse the alleged victim in each of these cases if he was, in fact, left alone with them. The proof that other crimes were also committed during the time he was alone with the other girls (not charged in the information) is gratuitous and intended only to prove his bad character or propensity.
[6] Williams v. State, 110 So.2d 654 (Fla. 1959).
[7] The reason announced by the supreme court for this distinction was:

Cases involving sexual battery committed within the familial context present special problems. The victim knows the perpetrator, e.g., a parent, and identity is not an issue. The victim is typically the sole eye witness and corroborative evidence is scant. Credibility becomes the focal issue.
But even in cases not involving the familial context, as in this case, and in non-sexual crimes, corroborative evidence may be scant and credibility may become the focal issue.
For example, in a single witness robbery by an acquaintance (so that identity is not an issue), would it be appropriate to admit evidence that the defendant committed other robberies only to corroborate the testimony of the witness?
Because this is such a heinous crime, harsh penalties are mandated and justified. There is broad agreement that no crime is more abhorrent than sexually abusing one's own child. That is precisely the reason that a policy making it more likely that a wrongful conviction may be obtained is surprising
[8] If the accused's defense was that although he had opportunity, he would not have molested the young victims as charged in the informations because he has no sexual interest in five-year-old girls, then the evidence that he molested other five-year-old girls would have been admissible under section 90.404(2)(a) because it would be relevant to a material fact in issue. But this was not his defense.
[1] The majority evidently assumes such testimony is not foreclosed by the court's very broad order. The breadth of the order is in part attributable to the prolix nature of the state's Notice of Intent to Offer Section 90.404(2) Evidence. It is unclear whether the court intended in its order to exclude all evidence mentioned in the paragraphs it did not identify as being admissible evidence, such as testimony concerning defendant's presence and custodial relationship to the children.
[2] The lower court also excluded the proffered evidence on the ground the collateral crimes were not strikingly similar. Based on what was admitted and excluded, it appears that this conclusion was based on the fact that the particular sex acts were not identical. In Jessica's case, for example, where the information charged the defendant with placing his penis in union with the victim's mouth, evidence of tongue/vaginal touching or penile penetration was disallowed. This level of striking similarity is not required. Even where similarity is required, the level of similarity required will depend on the circumstances. In child sexual assault cases, such testimony is admissible even where the sex acts are not identical. See, e.g., Calloway v. State, 520 So.2d 665 (Fla. 1st DCA), rev. denied, 529 So.2d 693 (Fla. 1988). Where a common plan or scheme is the issue, "striking similarity" is required, but such similarity is not essential if probative of a different material fact in issue. Williams v. State, 621 So.2d at 414. In the present case, the performance of one type of oral sexual act on a child would tend to prove the opportunity to commit other variations.
[3] Consistent with the approach taken by the Third District in Snowden, the facts of this case present the type of custodial involvement with child victims that warrants the corroborative use of such similar act evidence. See Woodfin v. State, 553 So.2d 1355 (Fla. 4th DCA 1989), rev. denied, 563 So.2d 635 (Fla. 1990).