667 So.2d 325 (1995)
Dean A. MILLER, Appellant,
v.
STATE of Florida Appellee.
No. 94-2007.
District Court of Appeal of Florida, First District.
October 24, 1995.
*326 Nancy A. Daniels, Public Defender; Fred Parker Bingham II, Assistant Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Attorney General; Mark Menser, Assistant Attorney General, Tallahassee, for appellee.
WOLF, Judge.
Dean A. Miller appeals from a final judgment and sentence for resisting arrest with violence, battery upon a law enforcement officer, corruption by threat to a public official, criminal mischief by damage to property in the amount of $1,000 or greater, and disorderly conduct. Appellant raises four issues on appeal: (1) Whether the evidence was sufficient to sustain appellant's conviction for disorderly conduct; (2) whether the trial court erred in admitting similar fact evidence; (3) whether the allegations of count III were sufficient to charge the crime of corruption or influence of a public official by threat; and (4) whether the evidence was sufficient to sustain the conviction and sentence of the charged offense of criminal mischief, a third-degree felony. We find merit as to all of the issues except the second issue. We, therefore, reverse as to the first, third, and fourth issues, and affirm as to the second issue.
James Newsome, a courthouse employee and auxiliary deputy, lives next door to appellant, his wife, and stepson. On the evening of May 23, 1993, appellant's stepson went to Newsome's house and stated that appellant had been drinking, he and his wife were arguing, and appellant had hit his wife. Appellant's stepson asked Newsome to call the sheriff's office. Mr. Newsome called for backup, and waited at his house until Deputy Cook arrived. The two men then walked up to appellant's wife, who invited them into the house. Appellant "was lying on the floor in a fetal position in the kitchen." Appellant awakened and said that he wanted to leave, but his wife would not let him have the keys to his van. Appellant then began to get loud, and "was cussing a little bit." Mrs. Smith *327 arrived and told appellant she would be willing to take him to his van. Appellant then started getting loud and cursing everyone, and that's when Officer Cook placed him under arrest. Newsome gave the following description of the circumstances of the arrest:
A. Out in the yard, getting ready for them to leave he started cussing real loud, and Officer Cook then placed him under arrest.
Q. Who was he cussing at?
A. Everyone.
Q. Did he say anything specifically to Mrs. Smith?
A. He was cussing at her too, also.
Q. Was this in a residential area?
A. Yes.
Q. Were other houses around?
A. Yes, sir.
Q. Late at night?
A. Yes, sir, and Deputy Cook placed him under arrest for disorderly conduct. Yes, sir, he did.
Deputy Cook handcuffed appellant's hands behind his back and walked him to the car, with no problem. He said that he handcuffed appellant and took him to the patrol car without incident. He said that he advised appellant that he had a canine in the back seat, and he told appellant to stay still and the dog would not bother him. As Deputy Cook started to fasten appellant's seat belt, appellant swiveled and kicked Cook in the chest. Cook said the dog started to bark and continued to bark very loudly. Deputy Cook's car has no dog cage. Newsome heard "hollering" when Deputy Cook and appellant got to the car. As Deputy Cook waved to Newsome to assist him, Newsome saw appellant kick Cook in the chest. Newsome did not see the dog at appellant's head and did not see the dog bite appellant. Deputy Cook called for assistance. A deputy and an auxiliary deputy arrived within five minutes. The officers held appellant down while Deputy Cook put restraints on his legs. Newsome stated that during the struggle, appellant said he would kill the officer, his dog, and his wife when he got out of jail.
After leg restraints were placed on appellant, the officers carried him to Deputy Shiver's car. During this process, appellant "was still cussing, kicking, trying to kick." After being placed in the back of Deputy Shiver's car, appellant kicked out the right rear window. No evidence was presented concerning the value of the broken window. Appellant then came out of the broken window head first. At that point, officers took him to the ground, handcuffed his ankles, then carried him to Officer Forehand's car. Appellant was taken to the maximum security cell at the jail, still "cussing real loud, hollering at everybody."
At trial, Jonathan Stripling, appellant's stepson, essentially testified that there was no problem at the time of arrest until appellant was put in the police car and the police dog started biting and nipping at appellant's head. The stepson also stated that appellant kept repeating, "Don't let the dog bite me." Appellant, appellant's wife, and a neighbor also testified that appellant was cooperative until the police dog started nipping at his head.
At trial, the state, over defendant's objection, introduced evidence involving arrest incidents in 1986 in Panama City Beach and in 1990 in Washington County. In both incidents, appellant seemingly went berserk and was charged with resisting arrest with violence and battery on a law enforcement officer. The trial court ruled the evidence was "admissible to show lack of accident or lack of the defense of the dog made me do it."

1. Sufficiency of evidence of disorderly conduct
In State v. Saunders, 339 So.2d 641, 643 (Fla. 1976), the supreme court adopted a narrow construction of section 877.03, Florida Statutes, so that the statute could withstand constitutional challenges. The supreme court stated,
[W]e now limit the application of Section 877.03[, Florida Statutes,] so that it shall hereafter only apply either to words which "by their very utterance... inflict injury or tend to incite an immediate breach of *328 the peace," White v. State, 330 So.2d at 7;[1]see Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); or to words, known to be false, reporting some physical hazard in circumstances where such a report creates a clear and present danger of bodily harm to others. We construe the statute so that no words except "fighting words" or words like shouts of "fire" in a crowded theatre fall within its proscription, in order to avoid the constitutional problem of overbreadth, and "the danger that a citizen will be punished as a criminal for exercising his right of free speech." Spears v. State, 337 So.2d at 980.[2] With these two exceptions, Section 877.03 should not be read to proscribe the use of language in any fashion whatsoever [footnote omitted]. To this extent, we modify our previous decisions construing the statute.
Id. at 643 (footnotes to citations added).
The record in this case reflects that appellant was arrested because he continued to "cuss" and argue about his van keys in a loud voice after Deputy Cook told him to calm down. This conduct occurred within the confines of appellant's dwelling.[3] Although appellant's voice was loud and his language may have been offensive, there is nothing in the record to indicate that his conduct incited others to breach the peace or posed an imminent danger to others. Pursuant to Saunders and its progeny, to constitute a violation of section 877.03, there must be evidence of something more than loud or profane language or a belligerent attitude. See also L.A.T. v. State, 20 Fla.Law Weekly D416 (Fla. 3d DCA Feb. 15, 1995). Appellant's conviction for disorderly conduct is reversed.

2. Similar fact evidence
Section 90.404(2)(a), Florida Statutes (1993), states,
(2) OTHER CRIMES, WRONGS, OR ACTS. 
(a) Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
"[E]vidence of other crimes, whether factually similar or dissimilar to the charged crime, is admissible if the evidence is relevant to prove a matter of consequence other than bad character or propensity." Williams v. State, 621 So.2d 413, 414 (Fla. 1993). Such evidence may be admissible to disprove a defendant's theory of defense or to disprove a defendant's attempt to explain the intent of the defendant. In Williams, supra, collateral crime evidence was relevant to rebut evidence that the victim had consensual sex with the defendant in exchange for drugs. In Wuornos v. State, 644 So.2d 1000 (Fla. 1994), the collateral crime evidence was relevant to rebut the defendant's claim of self defense in a homicide action.
In the instant case, the defense's theory was that appellant did not intentionally resist an officer in a legal duty or batter the police officer, but appellant was only reacting to the police dog biting at his head. In this case, the collateral crime evidence was relevant to disprove this theory. Such evidence was admissible. See Wuornos, supra, and Williams, supra.

3. Sufficiency of allegations as to count III
Section 838.021, Florida Statutes, states,
Corruption by threat against public servant. 
(1) Whoever unlawfully harms or threatens unlawful harm to any public servant, to his immediate family, or to any other person with whose welfare he is interested, with the intent or purpose:
(a) To influence the performance of any act or omission which the person believes *329 to be, or the public servant represents as being, within the official discretion of the public servant, in violation of a public duty, or in performance of a public duty.
(b) To cause or induce him to use or exert, or procure the use or exertion of, any influence upon or with any other public servant regarding any act or omission which the person believes to be, or the public servant represents as being, within the official discretion of the public servant, in violation of a public duty, or in performance of a public duty.
(2) Prosecution under this section shall not require any allegation or proof that the public servant ultimately sought to be unlawfully influenced was qualified to act in the desired way, that he had assumed office, that the matter was properly pending before him or might by law properly be brought before him, that he possessed jurisdiction over the matter, or that his official action was necessary to achieve the person's purpose.
(3)(a) Whoever unlawfully harms any public servant or any other person with whose welfare he is interested shall be guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
(b) Whoever threatens unlawful harm to any public servant or to any other person with whose welfare he is interested shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
Appellant in this case was charged with a violation of section 838.021(3)(b), which states in part,
(3)(b) Whoever threatens unlawful harm to any public servant or to any other person with whose welfare he is interested shall be guilty of a felony of the third degree,
...
In Harrison v. State, 641 So.2d 486 (Fla. 5th DCA 1994), the offender was charged with a violation of section 838.021(3)(a), which states in part,
(3)(a) Whoever unlawfully harms any public servant or any other person with whose welfare he is interested shall be guilty of a felony of the second degree, ...
In Harrison, the court held that "subsection 838.021(3)(a) merely enumerates the penalty imposed for a conviction pursuant to subsections (1)(a) or (b) and that the court's denial of Harrison's motion to dismiss Count I was error." In this case, as in Harrison, the state failed to allege a violation of the essential elements of the offense charged. Therefore, appellant's conviction of count III, corruption by threat, is reversed.

4. Criminal mischief charge
Count IV of the information charged appellant with criminal mischief, amounting to damage in the amount of $1,000 or more, a violation of section 806.13, Florida Statutes. Section 806.13(1), Florida Statutes (1993), provided in part,
(1)(a) A person commits the offense of criminal mischief if he willfully and maliciously injures or damages by any means any real or personal property belonging to another, including, but not limited to, the placement of graffiti thereon or other acts of vandalism thereto.
(b) 1. If the damage to such property is $200 or less, it is a misdemeanor of the second degree, ...
2. If the damage to such property is greater than $200 but less than $1,000, it is a misdemeanor of the first degree, ...
3. If the damage is $1,000 or greater, ... it is a felony of the third degree, ...
Where the record contains sufficient evidence to sustain a conviction for criminal mischief, but no evidence as to the amount of damage to the property, an adjudication of guilt of a third-degree felony or first-degree misdemeanor must be reversed, for an adjudication as to a lesser degree of the offense. R.A.P. v. State, 575 So.2d 277, 279 (Fla. 1st DCA 1991).
No evidence was introduced at trial of this cause concerning the amount of damage appellant caused when he kicked out the rear window of the patrol car. Moreover, the trial court did not instruct as to the amount of damages, and the jury verdict form did not include a reference to the amount of damages. The trial court granted in part appellant's *330 motion for judgment of acquittal as to this charge. Although the court did not orally pronounce the lesser degree of the convicted offense, the judgment form lists the criminal mischief conviction as a first-degree misdemeanor. In the absence of any evidence as to amount of damage, the cause is remanded with directions to correct the judgment form to show the criminal mischief conviction as a second-degree misdemeanor.
Appellant's convictions for resisting arrest with violence and battery upon a law enforcement officer are affirmed. The convictions as to corruption by threat to a public official and disorderly conduct are reversed. The criminal mischief conviction is disposed of in accordance with the preceding paragraph.
JOANOS, J., concurs.
BOOTH, J., concurring in part and dissenting in part with written opinion.
BOOTH, Judge, concurring in part and dissenting in part.
I respectfully dissent from the majority's reversal on Issue 1, as the facts of this case were sufficient to sustain appellant's conviction for disorderly conduct. L.J.M. v. State, 541 So.2d 1321 (Fla. 1st DCA) (affirming finding that juvenile was guilty of disorderly conduct, holding that "it was well within the discretion of the judge below, sitting as the trier of fact, to find that appellant uttered the ... words with an intent to incite the police officer and perhaps others to violence"), rev. denied, 549 So.2d 1014 (Fla. 1989); Wasserman v. State, 446 So.2d 231 (Fla. 3d DCA 1984) (affirming disorderly conduct conviction on basis that appellant's conduct, apart from her spoken words, supported the conviction).
I also dissent from the majority's reversal on Issues 3 and 4, as those issues were either properly left to the jury or improperly preserved for appellate review. I concur with the majority's affirmance on Issue 2.
NOTES
[1] White v. State, 330 So.2d 3 (Fla. 1976).
[2] Spears v. State, 337 So.2d 977 (Fla. 1976).
[3] The definition of "dwelling" includes the curtilage. See Baker v. State, 636 So.2d 1342, 1343 (Fla. 1994).