697 So.2d 1275 (1997)
K.S., a juvenile, Appellant,
v.
The STATE of Florida, Appellee.
No. 96-2917.
District Court of Appeal of Florida, Third District.
August 13, 1997.
Bennett H. Brummer, Public Defender, and Tracy L. Kramer, Special Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Douglas Gurnic, Assistant Attorney General, for appellee.
Before SCHWARTZ, C.J., and NESBITT and GODERICH, JJ.
NESBITT, Judge.
This is yet another case where an individual's loud, obscene, verbal protests of police conduct result in a conviction, or adjudication of delinquency, for disorderly conduct and/or resisting arrest without violence. We reverse.
*1276 The testimony below established that a police officer was investigating a purse-snatching in the swimming pool area of an apartment complex. Between ten and fifteen people, including K.S. and his friends, were at the pool when the robbery occurred. Responding to what he obviously felt was an unjustified accusation by the officer, K.S. said "fuck this.... I didn't do anything.... This is bullshit."
At that point, the people at the pool gathered in the vicinity of the officer's car. Some, including K.S.'s cousin, were telling the officer that K.S. "didn't do anything" and that he should "let him go." K.S. again said "fuck this" and began to walk away from the officer. The officer then decided to arrest K.S. for disorderly conduct, grabbed him by the belt, and placed him in his police car.
This case is factually similar to, and legally indistinguishable from, L.A.T. v. State, 650 So.2d 214 (Fla. 3d DCA 1995). There, the juvenile specifically "called upon passers-by to witness and protest the arrest of his friend...." He did so by screaming, "is everybody watching this ... police brutality... Rodney King style." The officers testified that twenty to twenty-five people had gathered around while L.A.T. was screaming.
On appeal this court reversed L.A.T.'s adjudication of delinquency for disorderly conduct.
The record shows that while a number of persons gathered at the scene and observed the goings on, L.A.T.'s words neither themselves urged the crowd to respond nor actually had that effect. Specifically, they did not "disturb" or cause anybody to interfere with the arrest or otherwise to breach the peace.3
Id. at 217-18 & n. 3.
K.S.'s words in this case are even less egregious than L.A.T.'s in the sense that they were not directed at the crowd but were instead a coarse expression of frustration at what K.S. perceived was an unjust accusation. They clearly did not "by their very utterance inflict injury or tend to incite an immediate breach of the peace." State v. Saunders, 339 So.2d 641, 643 (Fla.1976)(internal quotations and citations omitted); see also Miller v. State, 667 So.2d 325, 328 (Fla. 1st DCA 1995); D.G. v. State, 661 So.2d 75 (Fla. 2d DCA 1995); C.P. v. State, 644 So.2d 600 (Fla. 2d DCA 1994). Compare C.L.B. v. State, 689 So.2d 1171 (Fla. 2d DCA 1997)(distinguishing L.A.T. and affirming adjudication where nonverbal acts combined with speech).
Consequently, we reverse the orders finding K.S. guilty of disorderly conduct and imposing sanctions.
3 The state relies upon the police testimony that L.A.T. was "creating a scene that was gathered around the officer" and that "the scene was getting uncontrollable." There was no evidence, however, either that anyone in the crowd was "incited" by his words or that he himself took any non-verbal "action" at all.