DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**HENRY LEE JONES, JR.,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D19-1189

[May 27, 2020]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Indian River County; Dan. L. Vaughn, Judge; L.T. Case No. 312011CF001459A.

Carey Haughwout, Public Defender, and Virginia Murphy, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Luke R. Napodano, Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

Appellant Henry Jones appeals from his convictions of first-degree murder with a firearm and burglary of a dwelling with assault or battery while armed. He raises one issue on appeal, related to the State's introduction of evidence linking Appellant to a previous burglary. Finding no error with respect to the trial court's admission of this collateral crime evidence, we affirm.

**Background**

The State's case relied in large part on the testimony of Appellant's co-defendant, Darius Robinson. Robinson testified that in late 2011, Appellant came to Robinson's residence, showed him a small revolver with a white pearl handle and asked Robinson to go with him to the beachside area of Vero Beach. Appellant indicated that he needed "help getting a safe," which Robinson understood as a request for "help to commit a crime." The two men proceeded to Vero Beach on Appellant's motorcycle and parked under a bridge. They then stole two bicycles from the front

yard of a home and rode around the area looking for a home to burglarize. After seeing a vehicle leaving from one home, they chose that home to burglarize.

As Appellant and Robinson were searching through the bedroom dressers and placing jewelry in a bag, Brian Simpson, one of the homeowners, returned. Appellant and Robinson retreated to a bathroom, where Robinson attempted to open a window while Appellant held the door. Robinson saw what was later determined to be a flagpole coming in from the other side of the door. He heard two gunshots and turned to see Appellant holding the same gun with the white pearl handle that Appellant had showed him earlier that day, and then heard the voice on the other side of the door say, "you got me." Robinson next saw Appellant fire two more shots. It was later determined that Simpson died as a result of multiple gunshot wounds.

Several days after the burglary/murder, Appellant and Robinson were arrested when they returned to the area to search for the revolver used to shoot Simpson. They were initially taken into custody for loitering, and Appellant was subsequently arrested when it was determined that he was driving with a suspended license. When officers searched his motorcycle, they discovered in its storage compartment a box of .22 caliber bullets that matched those discovered at the murder scene. The police then searched the home where Appellant was living and, in Appellant's room, they found jewelry that was identified as having been taken from the Simpson home. Other items found in Appellant's room were determined to have been taken from another home in the area which had been burglarized a few days earlier. Among the items the victim in this earlier burglary ("L.T.") had reported missing was a .22 caliber revolver with white pearl handle. In addition to the gun (which was never found) and the .22 caliber bullets found in Appellant's motorcycle, a number of other items that L.T. had reported missing were found in Appellant's room and identified by L.T.

Prior to trial, Appellant moved to exclude evidence of the L.T. burglary, arguing that it was "*Williams* rule evidence," a reference to *Williams v. State*, 110 So. 2d 654 (Fla. 1959). This motion in limine was denied.

During a five-day trial, over twenty witnesses testified for the State, tying Appellant to the Simpson burglary/murder. Robinson, as well as L.T. and police investigators, offered evidence linking Appellant to items taken in the L.T. burglary, including .22 caliber bullets of the type found both on Appellant's motorcycle and at the Simpson home, gun bags that were found in Appellant's room, and the revolver that was not found but matched the description provided by Robinson. At the conclusion of the

2

trial, the jury rendered a guilty verdict on both the murder and burglary charges. This appeal followed.

## Analysis

> The admission of collateral crime evidence is reviewed for an abuse of discretion. A trial court possesses wide discretion in determining the admissibility of evidence. Discretion is abused only where no reasonable person would take the view adopted by the trial court. The State may introduce evidence of a collateral crime when it is relevant to prove a material fact in issue like identity, preparation, motive, intent, opportunity, plan, absence of mistake or accident, or knowledge. However, even if the evidence is relevant, it is admissible only if its probative value is not substantially outweighed by the danger of unfair prejudice.

*Razz v. State*, 231 So. 3d 479, 481–82 (Fla. 4th DCA 2017) (internal citations and quotation marks omitted).

*A. The Relevance of the Collateral Crime Evidence to the Charged Crimes.*

Appellant argues that the trial court abused its discretion in allowing the State to introduce collateral crime evidence of the L.T. burglary because such evidence was not relevant to prove a material fact in the burglary at issue. He maintains that "the two burglaries bore no more similarity to one another than any other two burglaries of dwellings." Rather, Appellant contends that introduction of evidence suggesting his involvement in the L.T. burglary only prejudiced him by improperly attacking his character and propensity to commit crime.

Section 90.404(2)(a), Florida Statutes (2019), sets forth the general rule on the admissibility of collateral crime evidence and provides that the State may introduce similar fact evidence of a defendant's other crimes, wrongs or acts when it is relevant to prove a material issue other than the bad character or propensity of the defendant. § 90.404(2)(a), Fla. Stat. (2019). Such evidence may be admissible even where it points to the commission of another crime. *Williams*, 110 So. 2d at 659 ("[R]elevant evidence will not be excluded *merely* because it relates to similar facts which point to the commission of a separate crime.").

While the relevance of collateral crime evidence is often a function of similarity, the similarity of the offenses is not necessarily a requirement. *McLean v. State*, 934 So. 2d 1248, 1255 (Fla. 2006). Similarity is a

3

requirement of admissibility only when a party seeks to introduce collateral crime evidence for the purpose of establishing facts, such as identity or common plan, where the similarity between the charged offense and the other crime is what gives the evidence probative value. *Williams v. State*, 621 So. 2d 413, 414 (Fla. 1993). Collateral crime evidence, whether factually similar or dissimilar to the charged crime, may still be admitted if it is relevant and probative of a material fact in issue. *Id.*

Here, the L.T. burglary evidence was properly admitted because the collateral crime evidence was relevant to the issue of ownership and possession of the gun purportedly used in the subsequent commission of the Simpson burglary/murder. The State introduced evidence that, a few days before the Simpson burglary/murder, Appellant and Robinson had burglarized L.T.'s residence, stealing five firearms and .22 caliber bullets and blanks. The State then presented evidence that .22 bullets and blanks, matching the description of those stolen during the L.T. burglary, had been found in Appellant's motorcycle's storage compartment. Further, L.T. testified that among the five firearms stolen during the burglary of his home was a .22 caliber ladies' revolver with a worn bluish finish and white pearl handle, and that the revolver had been in a tan or brown range bag.

While the State did not recover the revolver, it introduced evidence that the tan or brown range bag in which the revolver had been stored was later found in Appellant's room, and that Appellant's fingerprints were on the ear muffs inside the range bag, suggesting that Appellant had also been in possession of the revolver. The State also elicited testimony from Robinson who identified Appellant as the shooter and co-participant in both the Simpson and L.T. burglaries. Robinson further testified that on the day of the Simpson burglary/murder, Appellant showed him a small revolver with a white handle, similar to the one L.T. had reported stolen from his property, and that while burglarizing the Simpson home, Robinson heard Appellant use a firearm to shoot the victim multiple times through the door.

The record indicates that the State did not introduce the collateral crime evidence merely to attack Appellant's character or to perpetuate a narrative that Appellant has a propensity to commit burglaries and that he had likely committed the Simpson burglary because he had previously committed the L.T. burglary. While this evidence surely had a prejudicial effect, the mere fact that such evidence was prejudicial did not alone make it inadmissible. "So long as evidence of other crimes is relevant for any purpose the fact that it is prejudicial does not make it inadmissible. The true test is relevancy." *Razz*, 231 So. 3d at 482 (quoting *Ashley v. State*,

265 So. 2d 685, 694 (Fla. 1972)).

Here, the prejudice is outweighed by the relevance of the collateral crime evidence to help prove Appellant's participation in the Simpson burglary/murder and, specifically, as strong circumstantial evidence that he possessed the murder weapon because he had obtained it only a few nights earlier during the L.T. burglary. *See id.* at 482-83 ("Although appellant contends that the evidence of the second shooting only speaks to his bad character, the evidence clearly has probative value in showing his possession of the murder weapon only eight days after the original crime, and was a significant piece of the puzzle linking Appellant to the weapons used in the [instant case].").

*B. The Discussion of the Collateral Crime was limited in scope.*

In furtherance of his undue prejudice argument, Appellant contends that evidence and testimony regarding the L.T. burglary became a "feature" of the Simpson burglary/murder trial, and that it so overwhelmed evidence of the Simpson burglary/murder that it prompted the jury to more readily believe that because he burglarized the L.T. property, he more than likely burglarized the Simpsons' property as well. "'Collateral crime evidence becomes an impermissible 'feature' where collateral act evidence 'overwhelms' evidence of the charged crime and becomes 'an impermissible attack on the defendant's character or propensity to commit crimes.'" *Barnett v. State,* 151 So. 3d 61, 63 (Fla. 4th DCA 2014) (quoting *Grier v. State,* 27 So. 3d 97, 101 (Fla. 4th DCA 2009)); *Bush v. State,* 690 So. 2d 670, 673 (Fla. 1st DCA 1997) ("Unfair prejudice results where the state makes a collateral offense a feature, instead of an incident, of a trial.").

Appellant's contention that the evidence surrounding the L.T. burglary became a "feature" of the trial is meritless and not supported by the record. Appellant's brief takes issue that forty pages of the trial transcript detailed testimony related to the L.T. burglary and the property taken from L.T.'s home. However, in its Answer Brief, the State correctly points out that the trial transcript spans 1,057 pages and that the five-day trial featured twenty-three witnesses, only three of whom commented on the L.T. burglary. Thus, discussion of the L.T. burglary was not so overwhelming to "'transcend the bounds of relevancy to the charge being tried' and the prosecution [did not] 'devolve[] from development of facts pertinent to the main issue of guilt or innocence into an assault on the character of the defendant.'" *Conde v. State,* 860 So. 2d 930, 945 (Fla. 2003) (quoting *Williams v. State,* 117 So. 2d 473, 475 (Fla. 1960)).

Further, the extent of the discussion of the L.T. burglary was limited to

the missing .22 bullets, blanks, firearms, and range bag—the items linking Appellant to possession of the white pearl handle revolver, the alleged murder weapon in this case. The trial court properly limited the scope of discussion of the L.T. burglary to when and where the burglary took place and the items taken during that burglary that were later recovered in Appellant's residence, motorcycle or on his person. Moreover, the jury was properly provided the following *Williams* rule instruction, immediately before jury deliberations:

> The evidence which had been admitted to show other crimes, wrongs or acts allegedly committed by the defendant will be considered . . . by you only as that evidence relates to proof of opportunity, preparation, plan or possession of a revolver or firearm on the part of the defendant. However, the defendant cannot be convicted for a crime, wrong or act that is not included in the indictment and this evidence should not be considered by you as evidence of bad character or propensity.

Accordingly, the trial court did not err by admitting the evidence related to the L.T. burglary, as the evidence adduced about that burglary was limited in scope to the material issues relevant to this case.

## Conclusion

On November 17, 2011, Brian Simpson was murdered while defending his home. Soon thereafter, Appellant was arrested and charged with Simpson's murder and the burglary of his dwelling. A comprehensive police investigation preceded and followed the arrest, leading to Appellant's prosecution and conviction in 2014. Due to an error during the jury selection voir dire, a second trial was necessary. *Jones v. State*, 215 So. 3d 742 (Fla. 4th DCA 2017). To their credit, counsel for the State and the defense vigorously argued their respective cases anew, over the course of five days. In 2019, Appellant was convicted of burglary and the unnecessary and tragic murder of Brian Simpson. Finding no error with the trial court's rulings as to the admission of *Williams* rule evidence, the only issue before us in this appeal, we affirm Appellant's convictions of first-degree murder and burglary and his life sentences.

*Affirmed.*

GROSS and GERBER, JJ., concur.

\*　　　\*　　　\*

*Not final until disposition of timely filed motion for rehearing.*